### IN THE UNITED STATES DISTRICT COURT FOR THE
### SOUTHERN DISTRCIT OF FLORIDA

### CASE NO. 9:19-cv-81080-ROSENBERG/REINHART

JOSEPH R. TOMELLERI,

                    Plaintiff,

v.

JOHN N. NATALE, JR., et al.

                    Defendants.

_____/

### DEFENDANTS' MOTION TO DISMISS COUNTS I–III AND X–XII OF THE
### SECOND AMENDED COMPLAINT BASED ON PLAINTIFF'S LACK OF STANDING
### TO ASSERT CLAIMS FOR COPYRIGHT INFRINGEMENT OF THE WORKS,
### WITH INCORPORATED MEMORANDUM OF LAW

Defendants respectfully move to dismiss Counts I–III and X–XII of the Second Amended

Complaint, alleging copyright infringement as to copyright registration numbers TX 3-082-429 and

VA 1-673-790, pursuant to Fed. R. Civ. P. 12(b)(1) because the Plaintiff lacks standing to assert claims

of infringement for those works, and therefore, the Court lacks subject matter jurisdiction over those

claims, as set forth in the incorporated memorandum of law.

                             Respectfully submitted,

                             **Andrew D. Lockton**
                             Andrew D. Lockton, Esq. (Florida Bar No. 115519)
                             Edward F. McHale, Esq. (Florida Bar No. 190300)
                             McHALE & SLAVIN, P.A.
                             2855 PGA Boulevard
                             Palm Beach Gardens, Florida 33410
                             Telephone:     (561) 625-6575
                             Facsimile:     (561) 625-6572
                             E-mail:        litigation@mchaleslavin.com

                             *Attorneys for Defendants*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................................. iii

STATEMENT OF FACTS ..................................................................................................... 1

ARGUMENT ........................................................................................................................... 1

I.     THE PLAINTIFF DOES NOT HAVE STANDING TO ASSERT THE COPYRIGHT REGISTRATIONS
       IDENTIFIED IN THE SECOND AMENDED COMPLAINT, AND THEREFORE, THE COURT DOES
       NOT HAVE SUBJECT MATTER JURISDICTION OVER COUNTS I–III AND X–XII OF THE
       SECOND AMENDED COMPLAINT ...................................................................................... 3

       A. Legal Standard ....................................................................................................... 3

       B. The Plaintiff is Not the Legal or Beneficial Owner of the Copyrights for the Works Registered
          as TX 3-082-429 and VA 1-673-790, and Therefore, Lacks Standing To Assert Claims of
          Copyright Infringement Based on Those Works ..................................................... 8

          1. The copyright in a compilation, which includes collective works, is separate and distinct
             from the copyright in the individual contributions which make up the compilation ........ 6

          2. Unless the owner of the collective work is also the owner of the constituent parts of the
             collective work, registration of the collective work cannot register the underlying
             constituent parts ....................................................................................................... 8

          3. The registration certificates identify the University Press of Kansas and the University of
             Minnesota Press as the owners of the asserted copyright registrations ........................... 10

             1. The University Press of Kansas owns the copyright in "Fishes of the Central United
                States." ...................................................................................................................... 10

                a. The "work" registered is the book "Fishes of the Central United States," a
                   compilation .......................................................................................................... 10

                b. The University Press of Kansas owns the copyright registration for "Fishes of he
                   Central United States," TX 3-082-429, asserted in this action ............................... 11

             2. The University of Minnesota Press owns the copyright in "The Great Minnesota Fish
                Book." ...................................................................................................................... 13

                a. The "work" registered is the book "The Great Minnesota Fish Book," a
                   compilation .......................................................................................................... 13

                b. The University of Minnesota Press owns the copyright registration for "The Great
                   Minnesota Fish Book," VA 1-673-790, asserted in this action .............................. 14

4.   If the University Press of Kansas and the University of Minnesota Press do not, in fact, own the copyrights in the asserted registrations, those registrations are invalid and Counts I–III and X–XII must still be dismissed.................................................................................15

5.   The *illustrations* asserted in this action to have been unlawfully reproduced and displayed are not covered within the scope of the asserted registrations, and therefore, have not been registered as required by 17 U.S.C. § 411(a) .......................................................16

II.   THE PLAINTIFF LACKS STANDING TO ASSERT COUNTS III, VI, AND IX AGAINST DEFENDANT GULF COAST LAKES AND WETLANDS, INC.  BECAUSE ALL ALLEGATIONS IN THE SECOND AMENDED COMPLAINT REFER TO ACTS OF A SEPARATE AND DISTINCT ENTITY .................18

CONCLUSION..........................................................................................................................18

# TABLE OF AUTHORITIES

Page(s)

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.*
  747 F.3d 673 (9th Cir. 2014) .................................................................................................. 9

*Cone Corp. v. Fla. Dep't of Transp.*
  921 F.2d 1190 (11th Cir. 1991) .............................................................................................. 3

*Feist Pub'lns, Inc v. Rural Tel. Serv. Co.*
  499 U.S. 340 (1991) ............................................................................................................ 4, 8

*Icc Evaluation Serv., LLC v. Int'l Ass'n of Plumbing & Mech. Officials, Inc.*
  Civil Action No. 16-54 (EGS/DAR), 2019 U.S. Dist. LEXIS 230371 (D.D.C. Nov. 22, 2019) ....... 9

*Lawrence v. Dunbar*
  919 F.2d 1525 (11th Cir. 1990) .......................................................................................... 4, 5

*McElmurray v. Consolidated Gov't of Augusta-Richmond County*
  501 F.3d 1244 (11th Cir. 2007) ..................................................................................... 2, 3, 4

*Metro. Reg'l Info. Sys. v. Home Realty Network, Inc.*
  722 F.3d 591 (4th Cir. 2013) .................................................................................................. 9

*Morris v. Business Concepts, Inc.*
  259 F.3d 65 (2d Cir. 2001) ..................................................................................................... 9

*New York Times Co. v. Tasini*
  533 U.S. 483 (2001) ..................................................................... 7, 8, 11, 12, 13, 14, 15, 17

*Oravec v. Sunny Isles Luxury Ventures, L.C.*
  527 F.3d 1218 (11th Cir. 2008) .................................................................................. 9, 16, 17

*Prof'l Led Lighting, Ltd. v. Aadyn Tech.*
  88 F. Supp. 3d 1356 (S.D. Fla. 2015 ) ......................................................................... 4, 13, 15

*Reed Elsevier, Inc. v. Muchnick*
  559 U.S. 154 (2010) .......................................................................................................... 9, 16

*Saregama India Ltd. v. Mosley*
  635 F.3d 1284 (11th Cir. 2011) .............................................................................................. 4

*Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*
  524 F.3d 1229 (11th Cir. 2008) .......................................................................................... 3, 4

*Tomelleri v. Zazzle*
  Case No. 13-CV-02576-EFM-TJJ, 2015 U.S. Dist. LEXIS 165007 (D. Kan. 2015) ..................... 1

**Statutes**

17 U.S.C. § 101 ...............................................................................................6, 7, 8, 11, 14

17 U.S.C. § 102 ...........................................................................................................6, 7

17 U.S.C. § 103 ...................................................................................................6, 7, 8, 17

17 U.S.C. § 201(c) .....................................................................................................7, 8

17 U.S.C. § 408 ...............................................................8, 9, 10, 11, 12, 13, 14, 15, 16

17 U.S.C. § 409 .................................................................................................9, 10, 16

17 U.S..C. § 410(c) .......................................................................................5, 11, 12, 14

17 U.S..C. § 411(a) ..........................................................................................................6, 16

**Rules**

Fed. R. Civ. P. 12 ............................................................................................................3

**Regulations**

37 C.F.R. § 202.3...........................................................................9, 10, 11, 12, 13, 14, 15, 16

**Other Sources**

Compendium of U.S. Copyright Office Practices (3d ed. 2014) .....................................9, 10, 12, 13, 15

## MEMORANDUM OF LAW

Having filed nearly seventy (70) actions, and closed over thirty (30) of them, the Plaintiff has never *once* taken a case to trial and has only *once* let the merits even be addressed by a court—where it was found possible (if not likely) that the Plaintiff's illustrations were not protectable under the Copyright Laws. DE. 71-6; *see Tomelleri v. Zazzle*, Case No. 13-CV-02576-EFM-TJJ, 2015 U.S. Dist. LEXIS 165007 (D. Kan. 2015). Instead, cases are quickly settled despite serious and significant deficiencies in the merits of these actions. Though Plaintiff has filed copyright-infringement actions *many* times over the years, the registrations at issue here reflect that the Plaintiff does not have standing to assert them—they are owned by the University Press of Kansas (owner of registration TX 3-082-429) and the University of Minnesota Press (the owner of registration VA 1-673-790), the entities which filed those applications.

## STATEMENT OF FACTS

Plaintiff has a long history of copyright litigation regarding fish illustrations. DE 71-6; *see generally Tomelleri v. Zazzle*, 2015 U.S. Dist. LEXIS 165007. Since July of 1997, the Plaintiff has filed approximately seventy (70) actions for copyright infringement. *Id.* Although most of those actions have been filed in the last six (6) months, the Plaintiff filed fifteen (15) actions for copyright infringement between 1996 and 2015, with six (6) of those actions filed between November 5, 2013 and September 2, 2014. DE 71-6 at pages 2-4.

Plaintiff alleges that Defendant Orlando Lakes and Wetlands, Inc. ("OLW") owns and operates the website www.orlandolakesandwetlands.com, SAC ¶ 39, that Defendant Palm Beach Aquatics, Inc. ("PBA") owns and operates the website www.pbaquatics.com, SAC ¶ 64, and that Defendant Gulf Coast Lakes and Wetlands, Inc. owns and operates the website www.gulfcoastlakesandwetlands.com, SAC ¶ 83. Defendant John N. Natale, Jr. ("Natale") is an officer of Defendants OLW, PBA, and GCLW. SAC ¶¶ 148, 152, 156.

1

Plaintiff alleges that copyright registrations TX 3-082-429 and VA 1-673-790 are being infringed by the Defendants, based on the alleged reproduction and display of three (3) fish illustrations on OLW's website, PBA's website, and GCLW's website.  SAC ¶¶ 31, 39, 43-47, 63-72, 82-91.  Each of the websites is allegedly "distributed nationwide and viewable by any individual with internet access," SAC ¶¶ 40, 65, 84, and further, was viewed by individuals all over the country, SAC ¶¶ 47, 72, 91.  The registration certificate for TX 3-082-429 is attached hereto as Exhibit "A", and the registration certificate for VA 1-673-790 is attached hereto as Exhibit "C".[1]

TX 3-082-429 is the registration for copyright in the work "Fishes of the Central United States."  Ex. A, section 1.  "Fishes of the Central United States" is a book, including illustrations by the Plaintiff Joseph R. Tomelleri, which was first published in 1990 and a second edition was published in 2011.  Exhibit "B" attached hereto (purchase information for "Fishes of the Central United States" first endition); *see also* Ex. A, section 3 (identifying the registered work was first published April 20, 1990).  Consistent with that public description of that work, the registration certificate identifies that the Plaintiff  Joseph R. Tomelleri is the "creator of illustrations,"  and that his contribution was "illustrations only." Ex. A §§ 2, 4.  Section 10 of the registration includes the "certification," signed by Courtney Hay on March 7, 1991 as the "authorized agent of University Press of Kansas," identifying the University Press of Kansas as the "author or other claimant or owner of exclusive right(s)." Ex. A § 10.  Further, Courtney Hay, on behalf of the University Press of Kansas, is identified as the individual for correspondence.  Ex. A § 9.

---

[1] Because the copyright registrations at-issue here were identified in the Second Amended Complaint those certificates are properly incorporated by reference into the pleading and can be the basis for ruling on the present motion without looking outside of the "four corners" of the Second Amended Complaint.  Further, because this is a factual challenge to the Plaintiff's standing to assert the registrations at issue, the Court properly accepts evidence from outside of the pleadings. *McElmurray v. Consolidated Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007).

VA 1-673-790 is the registration for copyright in the work "The Great Minnesota Fish Book." Ex. C. "The Great Minnesota Fish Book" is also a book, including illustrations by the Plaintiff Joseph R. Tomelleri. Exhibit "D", attached hereto (purchase information for the book "The Great Minnesota Fish Book") Consistent with that public description of the work, the registration certificate identifies Plaintiff's contribution as the creator of 2-D artwork for that work. Ex. C. The certification is provided by Jeffrey Moen on April 3, 2009. Ex. C. At the very end of the registration certificate, it identifies for correspondence: "University of Minnesota Press[,] Jefferey Moen[,] 111 Third Avenue South, Suite 290[,] Minneapolis, MN 55401." Ex. C. Jeffrey Moen is an employee of the University of Minnesota Press, as reflected in Exhibit "E", attached hereto (identifying "Jeff Moen" as the "Rights, Permissions, and Contracts Coordinator" for the University of Minnesota Press).

## ARGUMENT

I.   **THE PLAINTIFF DOES NOT HAVE STANDING TO ASSERT THE COPYRIGHT REGISTRATIONS IDENTIFIED IN THE SECOND AMENDED COMPLAINT, AND THEREFORE, THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER COUNTS I–III AND X–XII OF THE SECOND AMENDED COMPLAINT.**

### A.  Legal Standard.

Standing is a jurisdictional requirement, and "a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (quoting *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991) (internal quotation marks omitted). An attack on the subject matter jurisdiction of the Court can be either facial or factual. *McElmurray v. Consolidated Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007). "A facial attack on the complaint requires the court to merely look to see if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* (quotations and citations omitted). "By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the

pleadings, such as affidavits or testimony." *Stalley*, 524 F.3d at 1233 (citing *McElmurray*, 501 F.3d at 1251). In a factual attack on standing, a court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case . . . , no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

**B. The Plaintiff is Not the Legal or Beneficial Owner of the Copyrights for the Works Registered as TX 3-082-429 and VA 1-673-790, and Therefore, Lacks Standing To Assert Claims of Copyright Infringement Based on Those Works.**

"Under the Copyright Act, only the 'legal or beneficial owner of an exclusive right under a copyright' may 'institute an action for any infringement of that particular right while he or she is the owner of it.'" *Prof'l Led Lighting, Ltd. v. Aadyn Tech.*, 88 F. Supp. 3d 1356, 1369 (S.D. Fla. 2015) (Bloom, J.) (quoting 17 U.S.C. § 501(b)); *see also Feist Pub'lns, Inc v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) ("To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."). "Accordingly, 'only the legal or beneficial owner of an "exclusive right" has standing to bring a copyright infringement action' under the Copyright Act." *Prof'l Led Lighting*, 88 F. Supp. 3d at 1369 (quoting *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290-91 (11th Cir. 2011)). Without the legal or beneficial ownership of an exclusive right in the registered copyright, there is no case of controversy; there is no injury or causation, and judicial intervention cannot redress the perceived harm. *See id.*

On the face of the registrations, the Plaintiff is not the legal owner of those registrations, Ex. A, C, and as is demonstrated in the Second Amended Compliant, the Plaintiff is not the beneficial owner of those registration, *see* SAC ¶ 28. Therefore, the Plaintiff does not have standing to assert the claims for copyright infringement addressed in Counts I-III and X-XII of the Second Amended Complaint. Though conclusorily alleging the Plaintiff "is the sole owner and proprietor of all rights, titles, and interest in, and to, the copyrights for the illustrations for a number and variety of fish that

include the fish illustrations at issue in this case (the 'Works')," SAC ¶ 28, reviewing the <u>facts stated in the registration certificates</u> establishes that the asserted registrations are—in fact—owned by the University Press of Kansas and the University of Minnesota Press, *see infra*, Section I(B)(3).

The facts stated in those registrations' certificates are presumed correct.  17 U.S.C. § 410(c). Under § 410(c), "[i]n any judicial proceedings the certificate of registration made before or within five years after first publication of the work <u>shall constitute prima facie evidence of</u> the validity of the copyright and <u>the facts stated in the certificate</u>. . . . ."  17 U.S.C. § 410(c) (emphasis added).  Thus, the facts in the registration certificates must be presumed true, and to avoid dismissal the Plaintiff must prove that he is entitled to bring these infringement claims.  *See id.*; *see also Lawrence*, 919 F.2d at 1529 (the allegations in the pleading are not presumed true in a factual attack on standing).  In order to do that, the Plaintiff will need to prove those facts are not correct, in such a way as not simultaneously invalidate those registrations, *see infra*, Section I(B)(5).

Moreover, though the Plaintiff is purportedly employing copyright registrations TX 3-082-429 and VA 1-673-790, the works as identified are not at issue—instead, the Plaintiff alleges infringement of <u>"illustrations at issue" which are not part of the protectable subject matter of those registered works</u>. *Compare* SAC ¶ 31 (identifying illustrations "Bluegill", "Largemouth Bass", and "Grass Carp" as the "Works at issue") *with* Ex. A (identifying the "Work" registered as TX 3-082-429 as "Fishes of the Central United States") *and* Ex. C (identifying the "Work" registered as VA 1-673-790 as "The Great Minnesota Fish Book"); *see* 17 U.S.C. §§ 103(b), 201(c); *see also infra*, Section I(B)(1)-(3).  The Plaintiff is asserting <u>registrations he does not own</u> because his "illustrations at issue in this case" are not registered, in violation of 17 U.S.C. § 410(c).  SAC ¶ 28; *see infra*, Section I(B)(6).

The copyright registrations asserted in this action are for two compilations, i.e. the collective whole of the books, that the Plaintiff is not the author, claimant, or owner of.  *Infra*, Sections I(B)(1)-(3).  The copyright registered covers those compilations as a whole and excludes any protection for

the constituent contributions to the collective whole.  17 U.S.C. § 103(b); *see infra*, Section I(B)(1)-(2).

The Plaintiff is an artist who only <u>contributed to those compilations</u>, i.e., provided the illustrations

used in those works.  Exs. A, B; *see also* SAC ¶¶ 20-31.  Therefore, the Plaintiff has no right to assert

the Universities' registrations for the copyright in the compilations as a whole, and <u>absent a separate</u>

<u>registration for the individual contribution,</u> he has failed to register the asserted illustrations as required

by 17 U.S.C. § 411(a), *see infra*, Sections I(B)(1)-(2) and (5).  Accordingly, the Court lacks jurisdiction

over the Plaintiff's infringement claims for registrations TX 3-082-429 and VA 1-673-790.  Further,

"the illustrations at issue in this case" are <u>not</u> protected by those registrations and have not been

registered prior to filing this action, as required by 17 U.S.C. § 411(a).  SAC ¶ 28; *see infra*, Sections

I(B)(1)-(2) and (5).

1.  **The copyright in a compilation, which includes collective works, is separate and distinct from the copyright in the individual contributions which make up the compilation.**

"Copyright protection subsists . . . in original works of authorship fixed in any tangible medium

of expression . . . from which they can be perceived, reproduced, or otherwise communicated."  17

U.S.C. § 102(a).  The Copyright Act defines various types of "works" which can be protected,

including, *inter alia*, "pictorial, graphic, and sculptural works,"[2] a "derivative work,"[3] a "collective

---

[2] "'Pictorial, graphic, and sculptural works' include two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans.  Such works or artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article."  17 U.S.C. § 101 (definitions).

[3] "A 'derivative work' is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted.  A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a 'derivative work.'"  17 U.S.C. § 101 (definitions).

6

work,"[4] and a "compilation."[5]  17 U.S.C. §§ 101 (definitions), 102 (subject matter of a copyright in general), 103 (subject matter of a copyright in a compilation or derivative work).  Here, the rights conferred by the Act to "compilations," of which a "collective work" is a subset, is critical.  The copyright in a compilation extends <u>only</u> to the subject matter <u>of the compilation</u>, i.e., the "collection and assembling of preexisting materials."  17 U.S.C. §§ 101 (definitions), 103(b) (subject matter of copyright in a compilation); *New York Times Co. v. Tasini*, 533 U.S. 483, 493-94 (2001) (Ginsburg, J.).  Moreover, the copyright in a compilation (including a collective work) <u>expressly excludes</u> the subject matter of the underlying preexisting materials.  17 U.S.C. § 103(b); *see also Tasini*, 533 U.S. at 493-94.

As a subset of "compilations," the registration for a "collective work" is only for the "collection and assembling" of the constituent underlying works.  17 U.S.C.  §§ 101, 103(b).  "Because '[c]opyright in each separate contribution to a collective work is distinct from copyright in the collective work as a whole,' the copyright of the constituent part of a collective work belongs to the author of the constituent part, not the owner of the collective work copyright."  17 U.S.C. § 201(c); *see also Tasini*, 533 U.S. at 493-94 ("When, as in this case, a freelance author has contributed an article to a 'collective work' such as a newspaper or magazine, see § 101 (defining 'collective work'), the statute recognizes two distinct copyrighted works: 'Copyright in *each separate contribution to a collective work* is distinct from copyright in *the collective work as a whole* . . . .'  § 201(c) (emphasis added).").  While copyright in the separate contribution will vest initially in the author of that contributed work, "[c]opyright in the collective work vests in the collective author (here, the newspaper or magazine

---

[4] "A 'collective work' is a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole."  17 U.S.C. § 101 (definitions).

[5] "A 'compilation' is a work formed by the collection and assembly of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.  The term 'compilation' includes collective works."  17 U.S.C. § 101 (definitions).

publisher) and extends only to the creative material contributed by that author, not to 'the preexisting material employed in the work.'" *Ibid.* (first citing 17 U.S.C. § 201(c) then quoting 17 U.S.C. § 103(b)); *see also Feist*, 499 U.S. at 358 (copyrights in "compilations"—a term that includes "collective works," 17 U.S.C. § 101—is limited to the compiler's original "selection, coordination, and arrangement" of constituent parts).  As the Court explained, § 201(c) "codified the discrete domains of 'copyright in each separate contribution to a collective work' and 'copyright in the collective work as a whole,'" and copyright in the collective work extends <u>only</u> to the arrangement of those underlying works, <u>not to the underlying works themselves</u>.  *Tasini*, 533 U.S. at 494, 496; 17 U.S.C. §§ 103(b), 201(c).

**2.   Unless the owner of the collective work is <u>also</u> the owner of the constituent parts of the collective work, registration of the collective work <u>cannot register</u> the underlying constituent parts.**

A collective work is a subset of "compilation."  17 U.S.C. § 101 (definition of "compilation"). It "is a work <u>formed by the collection and assembling of preexisting materials</u> or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."  *Ibid.* (emphasis added).  "The copyright in a compilation or derivative work <u>extends only to</u> the material contributed by the author of such work, <u>as distinguished</u> from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material."  17 U.S.C. § 103(b) (emphasis added); *see also Tasini*, 533 U.S. at 493-94.  Accordingly, when a compilation (or collective work) is registered, copyright <u>extends only to</u> "the collection and assembling of preexisting materials or of data that is selected, coordinated, or arranged"—it does not extend to the underlying material.  17 U.S.C §§ 101, 103(b); *Tasini*, 533 U.S. at 493-94.  The term "collective work" is used for compilations whose underlying constituent contributions, i.e., the "preexisting materials," are separately protectable by copyright.  17 U.S.C. § 101 (definitions).

In one specific scenario, however, registration of a collective work will also constitute registration of the underlying parts.  Relying on its authority under § 408(c)(1)-(2), the Copyright

Office has permitted that, <u>where the owner of a collective work also owns the constituent parts</u>, registration of the collective work "effectively" registers those constituent parts. *Icc Evaluation Serv., LLC v. Int'l Ass'n of Plumbing & Mech. Officials, Inc.*, Civil Action No. 16-54 (EGS/DAR), 2019 U.S. Dist. LEXIS 230371, *20-21 (D.D.C. Nov. 22, 2019) (first citing *Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.*, 747 F.3d 673, 679-80 (9th Cir. 2014), then citing U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 613.10(F) (3d ed. 2014) ("Compendium III")); *but see* 17 U.S.C. § 409(6) (requiring an application to identify, *inter alia*, "the title of the work," using the singular noun); *Metro. Reg'l Info. Sys. v. Home Realty Network, Inc.*, 722 F.3d 591, 597 (4th Cir. 2013) (citing 37 C.F.R. § 202.3(b)(5)-(10) as permitting "group registration of <u>certain</u> categories of collective works" which does not logically extend to collective works) (emphasis added).  "If a collective work owner <u>also owns the constituent works</u> in such a scenario, collective work registration is 'sufficient to permit an infringement action on behalf of component works[.]'"  *Icc Evaluation*, 2019 U.S. Dist. LEXIS 230371, *20 (quoting *Metro. Reg'l*, 722 F.3d at 598) (emphasis added).

Group registration of works is <u>only authorized</u> where all works are "by the same individual author," and such application <u>must</u> "identif[y] each work separately."  17 U.S.C. § 408(c)(1)-(2); *accord* Compendium III § 509.2 ("If the owner of the collective work does not own all rights in the copyright for a particular contribution, that party cannot register a claim to copyright in that contribution. Instead, the contribution must be registered individually by or on behalf of the author of the contribution or the party that owns the copyright in that work.") (citing *Morris v. Business Concepts, Inc.*, 259 F.3d 65, 71 (2d Cir. 2001), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160 (2010)); *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1229-30 (11th Cir. 2008) (rejecting the plaintiff's argument for "effective registration" of the preexisting material because it was not identified in the application).

**3. The registration certificates identify the University Press of Kansas and the University of Minnesota Press as the owners of the asserted copyright registrations.**

The asserted registrations, TX 3-082-429 and VA 1-673-790, are for compilations which include fish illustrations.[6]  TX 3-082-429, entitled "Fishes of the Central United States," and as VA 1-673-790, entitled "The Great Minnesota Fish Book."  SAC ¶ 31 (identifying these registrations as corresponding to the "illustrations" at issue in the pleading); Exs. A, C (registration certificates for the asserted registrations); *see also* Exs. B, D (reflecting purchase information for each of these books); *see also* Compendium III, § 508.1 (identifying "[a] book of news photos" as an example of "collective work").

**a. The University Press of Kansas owns the copyright in "Fishes of the Central United States."**

**i. The "work" registered is the book "Fishes of the Central United States," a compilation.**

The registration certificates for TX 3-082-429 identifies the registered work as "Fishes of the Central United States."  Ex. A § 1; 17 U.S.C. § 409(6) (requiring the application to contain the title of the work for which registration is sought); *see also* Compendium III § 610.  "Fishes of the Central United States" is a book about fish species which are found in the central United States, and the book includes text as well as illustrations by the Plaintiff.  *See* Ex. B.  As reflected in the registration certificate, the applicant for this registration was the University Press of Kansas, the publisher of the book "Fishes of the Central United States."  Ex. A §§ 9-11; Ex. B.  Only the author or owner of the work is entitled to file for a copyright registration.  17 U.S.C. § 408(a); 37 C.F.R. § 202.3(c)(1).  As the publisher of that book, the work authored or owned by the University Press of Kansas would be

---

[6] It is uncertain at this stage whether the Plaintiff's illustrations contained within each book (making up the constituent parts of the collective whole) are separately protectable by copyright.  As such, the works are referred to as compilations.  If the Plaintiff can establish copyrightable subject matter in the illustrations contained with the books, the works would be "collective works"; the distinction between these two terms is not important for the purposes of this Motion.

limited to the compilation <u>as a whole</u> of the work "Fishes of the Central United States," unless it also authored or owned the underlying materials.  *See Tasini*, 533 U.S. at 493-96 (explaining that ordinarily the author and owner of the collective work is the publisher, because the publisher "select[s], coordinate[s], [and] arrange[s]" the underlying material into the collective work); *see also* 17 U.S.C. § 101 (defining "compilation" and "collective work").

### ii.  The University Press of Kansas owns the copyright registration for "Fishes of the Central United States," TX 3-082-429, asserted in this action.

The University Press of Kansas applied for the copyright registration for "Fishes of the Central United States," which demonstrates that the University Press of Kansas <u>owns</u> the registration for "Fishes of the Central United States," TX 3-082-429.  Ex. A§§ 9-11; 17 U.S.C. § 408(a); 37 C.F.R. § 202.3(c)(1).  Only the author or owner of the copyright, or the agent of the author or owner, is entitled to file an application for copyright registration.   17 U.S.C. § 408(a); *see also* 37 C.F.R. § 202.3(c)(1) (specifying the parties who may submit an application for copyright registration). Because the University Press of Kansas applied for the copyright registration for "Fishes of the Central United States," whatever work was registered was <u>necessarily owned or authored</u> by the University Press of Kansas, or else the Copyright Office lacked authority to register the work.  *See* 17 U.S.C. § 408(a); *see also* 37 C.F.R. § 202.3(c)(1); *see also infra*, Section I(B)(4).

The registration for copyright in "Fishes of the Central United States" is presumed valid, as are the facts stated in the registration certificate.  *See* 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.").  The registered work was first published on April 20, 1990, Ex. A § 3, which corresponds to the publication of the book "Fishes of the Central United States," Ex. B, and the application was registered within five (5) years of that date, Ex. A (identifying an effective date of registration on May

2, 1991).  Therefore, the registration is presumed valid and the facts stated in the certificate are presumed correct.  *See* 17 U.S.C. § 410(c).

The University Press of Kansas's ownership of the copyright registration for "Fishes of the Central United States" is confirmed by the application.  The registration was applied for by the University Press of Kansas, and the certificate includes the required certification signed by "Courtney Hay" as the "authorized agent of University Press of Kansas," identifying the "University Press of Kansas" as the "author or other copyright claimant, or owner of exclusive right(s)."  Ex. A § 10.  Again, only the author or owner is authorized to apply for a copyright registration.  17 U.S.C. § 408(a); *see also* 37 C.F.R. § 202.3(c)(1); Compendium III § 402.  Moreover, the certificate identifies that Courtney Hay at the University Press of Kansas is the person to whom correspondence should be directed.  Ex. A § 9.  Under the Copyright Office procedures, the correspondent must be the author or owner (or agent thereof) of the work for which registration is sought.  *See* Compendium III § 403.

The certificate further clarifies that the Plaintiff <u>is not</u> the author or claimant <u>of the compilation</u> "Fishes of the Central United States"; rather, he is only the "creator of illustrations," and could be the claimant for the "illustrations only".  Ex. A § 2(a).  Though the certificate identifies Mr. Tomelleri as the "creator of illustrations," and lists him in the box as claimant of "illustrations only", these deficiencies for compliance with the Copyright Office's application are not critical; the author and claimant is identified in the application, just not in the proper sections.  Ex. A §§ 2(a), 4; *see also* Compendium III §§ 402, 404.  Critically, the "applicant," "the party who signs the certification and submits the application to the U.S. Copyright Office," was the University Press of Kansas, which <u>must be</u> the author or owner of the work being registered for the Copyright Office to have authority to register the copyright.  17 U.S.C. § 408(a); *see also* 37 C.F.R. § 202.3(c)(1); Compendium III § 402; *Tasini*, 533 U.S. at 493-96 (discussing the rights conferred to publishers of a collective work; the author

12

and owner of the collective work is the publisher, as it is the publisher that "select[s], coordinate[s], [and] arrange[s]" the underlying material into collective).

The Second Amended Complaint clarifies that these registrations are for the compilations. The Plaintiff clarified that this action is based upon alleged infringement of "fish <u>illustrations</u>," and then identified two distinct illustrations as being "covered" by the registration TX 3-082-429 (for "Fishes of the Central United States"). *See, e.g.*, SAC ¶ 28 ("Plaintiff is the sole owner and proprietor of all rights, titles, and interest in, and to, <u>the copyrights for illustrations</u> for a number and variety of fish that include <u>the fish illustrations at issue in this case (the 'Works')</u>.") (emphasis added); SAC ¶ 31 (identifying both the illustrations "Largemouth Bass" and "Grass Carp" under the registration number for "Fishes of the Central United States"). The registration certificate does not identify "Largemouth Bass" or "Grass Carp" as being registered works; instead it identifies that "Fishes of the Central United States" is the registered work. Ex. A. These allegations confirm that a compilation, <u>not illustrations</u>, was registered by the University Press of Kansas. *See* SAC ¶¶ 28, 31; 17 U.S.C. § 408(a); *see also* 37 C.F.R. § 202.3(c)(1); Compendium III § 402; *Tasini*, 533 U.S. at 493-96.

Accordingly, copyright registration TX 3-082-429 for "Fishes of the Central United States" is owned by its publisher, who was the author of that compilation, the University Press of Kansas. The Plaintiff is not the legal or beneficial owner of that work, and therefore, lacks standing to bring claims based on the alleged infringement of that work. *Prof'l Led Lighting*, 88 F. Supp. 3d at 1369.

**b. The University of Minnesota Press owns the copyright in "The Great Minnesota Fish Book."**

**i. The "work" registered is the book "The Great Minnesota Fish Book," a compilation.**

The registration certificates for VA 1-673-790 identifies the registered work as "The Great Minnesota Fish Book." Ex. C. "The Great Minnesota Fish Book" is a book about fish species which are found in Minnesota, and includes text as well as illustrations created by the Plaintiff. *See* Ex. D.

As reflected by the certificate, <u>the applicant</u> for that registration was the University of Minnesota Press, the publisher of the book "The Great Minnesota Fish Book." Ex. C; Ex. D. As discussed above, only the author or owner of the work is entitled to file for a copyright registration. 17 U.S.C. § 408(a); 37 C.F.R. § 202.3(c)(1). As the publisher of that book, the only work authored or owned by the University of Minnesota Press would be the compilation work entitled "The Great Minnesota Fish Book," unless underlying materials were assigned to it in writing or works were created under the work-made-for-hire doctrine. *See Tasini*, 533 U.S. at 493-96 (explaining that ordinarily the author and owner of the collective work is the publisher, because the publisher "select[s], coordinate[s], [and] arrange[s]" the underlying material into the collective work); *see also* 17 U.S.C. § 101 (defining "compilation" and "collective work"). Further, the registration being filed within five (5) years of first publishing "The Great Minnesota Fish Book" means that the registration is presumed valid and the facts in the certificate are presumed correct. 17 U.S.C. § 410(c).

> **ii.** **The University of Minnesota Press owns the copyright registration for "The Great Minnesota Fish Book," VA 1-673-790, asserted in this action.**

Though the registration certificate for the registration VA 1-673-790 does not include all information from the application, the way the certificate for TX 3-082-429 does, it nevertheless indicates that the University of Minnesota Press was the applicant, and therefore the owner, of that registration. *See* Ex. C. Again, the certificate identifies that applicant and correspondent are the University of Minnesota Press—not the Plaintiff. Ex. C. The certification was submitted by "Jeffery Moen," on behalf of the University of Minnesota Press. *Compare* Ex. C *with* Ex. E (University of Minnesota Press website indicating that "Jeff Moen" is the "Rights, Permissions, and Contracts Coordinator"). At the bottom of the second page, the certificate identifies Jeffery Moen as filing the application on behalf of the University of Minnesota Press. Ex. C. Again, only the author or owner of the "work" being registered is entitled to file for registration. 17 U.S.C. § 408(a); 37 C.F.R.

§ 202.3(c)(1); *see also* Compendium III § 402.  The University of Minnesota Press being listed for correspondence corroborates its ownership of that work.  *See* Compendium III § 404.

Just as with "Fishes of the Central United States," "The Great Minnesota Fish Book" was applied for by the University of Minnesota Press, with correspondence to be directed to that entity, and the book was published by that entity, i.e., the University of Minnesota Press is recognized in the registration certificate as the author and owner of the registration VA 1-673-790 for the compilation "The Great Minnesota Fish Book."  *See* 17 U.S.C. § 408(a); *see also* 37 C.F.R. § 202.3(c)(1); Compendium III § 402; *Tasini*, 533 U.S. at 493-96; Ex. D (identifying the University of Minnesota Press as the publisher of that book).  Therefore, the University of Minnesota Press is the author and owner of the copyright in the compilation as a whole—the registered work—and the Plaintiff lacks standing to assert claims for infringement of this copyright registration.  *Prof'l Led Lighting*, 88 F. Supp. 3d at 1369.

> **4.  If the University Press of Kansas and the University of Minnesota Press do not, in fact, own the copyrights in the asserted registrations, those registrations are invalid and Counts I–III and X–XII must still be dismissed.**

The applications for registration of the copyrights in "Fishes of the Central United States" and "The Great Minnesota Fish Book" are not perfect; there are many aspects of each application which does not comply with the rules for application promulgated by the Register of Copyrights.  Despite these infirmities, because the applicant for each registration was the University Press of Kansas and the University of Minnesota Press, respectively, the correct rights can be deduced from review of those registration certificates.  *See supra*, Section I(B)(3).  If, however, the Plaintiff rebuts the *prima facie* evidence that he is not the owner of the asserted works, then those registrations are invalid.  In such scenario the applicant did not have statutory authority to apply for registration, and the Copyright Office did not have authority to register any such claim.  *See* 17 U.S.C. § 408(a); *see also* 37 C.F.R. § 202.3(c)(1); Compendium III § 402.

To meet the statutory requirements for registration under the Copyright Act, the applicant must provide sufficient information to identify the work for which registration is sought and complete the application form as prescribed by the Register of Copyrights. 17 U.S.C. §§ 408, 409. Only the author of the work or the owner of the exclusive rights is authorized by Congress to file an application for registration of a copyright. 17 U.S.C. § 408(a); *see also* 37 C.F.R. § 202.3(c)(1). The University Press of Kansas applied for the registration for "Fishes of the Central United States," and the University of Minnesota Press applied for the registration for "The Great Minnesota Fish Book." Exs. A, C. If those Universities were not, in fact, the author or owners of the copyright in those works, respectively, then the Register of Copyrights did not have Congressional authority to register the copyrights. *See* 17 U.S.C. § 408(a); *see also* 37 C.F.R. § 202.3(c)(1).

Accordingly, if the Plaintiff can establish that the University Press of Kansas and University of Minnesota Press did not own the copyrights in "Fishes of the Central United States" and "The Great Minnesota Fish Book," respectively, those registrations are invalid because the Copyright Office lacked authority to register those works. *See* 17 U.S.C. § 408(a); *see also* 37 C.F.R. § 202.3(c)(1). In such case, this action should then be dismissed for failure to comply with § 411(a)'s requirement of registering a work prior to filing any infringement action. *See infra*, Section I(B)(5).

5. **The *illustrations* asserted in this action to have been unlawfully reproduced and displayed are not covered within the scope of the asserted registrations, and therefore, have not been registered as required by 17 U.S.C. § 411(a).**

"The Copyright Act provides that 'no action for infringement . . . shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.'" *Oravec*, 527 F.3d at 1228-29 (quoting 17 U.S.C. § 411(a)). While this was previously considered a jurisdictional prerequisite to an infringement action, *see id.* at 1229, the Supreme Court has held that § 411(a) is a non-jurisdictional precondition to bringing an infringement action, not implicating the subject-matter jurisdiction of the federal courts, *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 169 (2010).

The Second Amended Complaint states that the "works" at issue are certain "<u>illustrations</u>" owned by the Plaintiff. SAC ¶ 28 (identifying the "illustrations at issue in this case"). Incongruously, it also alleges that those <u>illustrations</u> are "covered" by copyright registrations TX 3-082-429 and VA 1-673-790. SAC ¶¶ 30-31. However, as addressed *supra* Section I(B)(3), those registrations are <u>only</u> <u>for</u> the compilations as a whole and expressly <u>do not include</u> the underlying illustrations asserted.

Reflecting the inaccuracy of the conclusory allegations attempting to establish standing, the Plaintiff alleges that registration TX 3-082-429 "corresponds" to both the "Largemouth Bass" illustration *and also* the "Grass Carp" illustration, and that registration VA 1-673-790 "corresponds to the "Bluegill" illustration. SAC ¶ 31. The registration certificates, however, do not indicate any such works, proving that those registrations do not correspond to *any* of the specific illustrations that Plaintiff claims ownership of, but rather to the collective works <u>Fishes of the Central United States</u> and <u>The Great Minnesota Fish Book</u>. Exs. A, C; *Oravec*, 527 F.3d at 1229-30 (rejecting the argument that a registration included, or "covered," the preexisting material because that preexisting material was not identified in the registration). Because those collective works were filed by, and on the behalf of, the University Press of Kansas, Ex. A, and the University of Minnesota Press, Ex. C, respectively, they cannot register any individual illustration of the Plaintiff's contained therein, *see* 17 U.S.C. § 103(b), *see also Tasini*, 533 U.S. at 493-94. Moreover, because the registrations do not identify any preexisting material, i.e., the "illustrations at issue in this case," those registrations do not include the illustrations under any scenario. *Oravec*, 527 F.3d at 1229-30.

The "illustrations at issue in this case" are not protected by the registrations asserted and have not been separately registered. Therefore, pursuing this action based on alleged infringement of those illustrations violates 17 U.S.C. § 411(a)'s precondition to filing an action. Counts I–III and X–XII should therefore be dismissed.

II. **THE PLAINTIFF LACKS STANDING TO ASSERT COUNTS III, VI, AND IX AGAINST DEFENDANT GULF COAST LAKES AND WETLANDS, INC. BECAUSE ALL ALLEGATIONS IN THE SECOND AMENDED COMPLAINT REFER TO ACTS OF A SEPARATE AND DISTINCT ENTITY.**

No factual allegation in the Second Amended Complaint relates to the Defendant Gulf Coast Lakes and Wetlands, Inc. ("GCLW"), and therefore, the Second Amended Complaint fails to raise a case or controversy regarding GCLW. The Plaintiff's confusion on this point was addressed in the Defendants' Answer, DE 71, which clarified that the website www.gulfcoastlakesandwetlands.com is not owned and operated by Defendant GCLW, but rather by Defendant Palm Beach Aquatics, Inc., which operates it through its registered fictitious name "Gulf Coast Lakes and Wetlands." *See* Exhibit "F", attached hereto (Sunbiz.org records for the fictitious name "Gulf Coast Lakes and Wetlands"). Further, a WHOIS search for the owner of that domain name confirms that the website is owned by Palm Beach Aquatics, Inc. Exhibit "G", attached hereto (reflecting WHOIS internet domain ownership information for the website www.gulfcoastlakesandwetlands.com). Because the only "case or controversy" allegedly related to Defendant GCLW is based on acts reflected on that website, the Second Amended Complaint fails to raise any case or controversy with regard to Defendant GCLW.

Accordingly, there is no injury or causation by Defendant GCLW, and the injury that is alleged is not redressable through an action against Defendant GCLW. Therefore, the Plaintiff lacks standing to bring these claims against Defendant GCLW, and it should be dismissed.

## CONCLUSION

For the all of the reasons discussed above, Defendants respectfully requests that the Court grant the instant motion and dismiss all claims in this action.

Respectfully submitted,

**Andrew D. Lockton**
Andrew D. Lockton, Esq. (Florida Bar No. 115519)
Edward F. McHale, Esq. (Florida Bar No. 190300)
McHale & Slavin, P.A.
2855 PGA Boulevard

18

Palm Beach Gardens, Florida 33410
Telephone:     (561) 625-6575
Facsimile:      (561) 625-6572
E-mail:          litigation@mchaleslavin.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the foregoing Defendants' Motion to Dismiss Counts I–III and X–XII of the Second Amended Complaint Based on Plaintiff's Lack of Standing to Assert Claims for Copyright Infringement of the Works, with Incorporated Memorandum of Law was filed electronically with the Court on May 29, 2020, which will automatically serve counsel for the Plaintiff. Counsel includes:

Steven H. Mustoe (*pro hac vice*)
EVANS & DIXON, LLC
Corporate Woods | Building 82
10851 Mastin Boulevard, Suite 900
Overland Park, Kansas 66210
Telephone:    913-701-6910
Facsimile:    913-341-2293
Email:        smustoe@evans-dixon.com
              copyright@evans-dixon.com

S. Brian Bull (Fla. Bar No. 363,560)
SCOTT, HARRIS, BRYAN, BARRA & JORGENSEN, P.A.
4400 PGA Boulevard, Suite 603
Palm Beach Gardens, Florida 33410
Telephone:    561-624-3900
Facsimile:    561-624-3533
Email:        sbbull@scott-harris.com

*Attorneys for Plaintiff*

<u>**Andrew D. Lockton**</u>
Andrew D. Lockton, Esq.